UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MAY 9 2000   EC

MICHAEL N. MILBY, CLERK OF COURT

| | |
|---|---|
| CARLOS OTERO,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. B-00-44<br><br>Criminal Number: B-96-337-01 |

United States District ___
Southern District of T___
FILED

AUG 2 3 2000

Michael N. Milby
Clerk of Court

---

## SUPPLEMENTAL MOTION IN SUPPORT OF PETITIONER'S SECTION 2255

---

COMES NOW, the Petitioner, Carlos Otero, appearing pro se, and hereby moves this Honorable Court in this, his Supplemental Motion in Support of his Section 2255. Mr. Otero is without counsel at this time, and therefore invokes the dictates of the Supreme Court's ruling in <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S.Ct. 594 (1972), where a pro se litigant is not held to the same stringent guideline as an attorney, and respectfully requests the Court apply any and all case law and/or rules of the District Court that would benefit him in gaining relief from the instant 10 year non-paroleable sentence imposed upon by this Court on April 30, 1997. For the reasons as set forth below, and those available within the trial record, Mr. Otero is entitled to relief at this time.

### I.
### FACTS

1. Mr. Otero was sentenced to a 10 year term of incarceration by the Honorable Judge Filemon B. Vela on April 30, 1997, following a jury trial wherein Mr. Otero was found guilty on Counts 1, 2 and 5 of a five count indictment charging narcotics and money laundering violations.

2.    Mr. Otero was represented by Court appointed counsel, Ernest Grumbles at trial, and after conviction by jury, filed a timely notice of appeal.

3.    The Court appointed new counsel to represent Mr. Otero for direct appeal, Mr. Alberto Pullen.

4.    On April 2, 2000, the Fifth Circuit Court of Appeals affirmed Mr. Otero's appeal on all counts (Counts 1,2 & 5).

5.    Mr. Otero practiced due diligence in obtaining the trial transcripts in the case at bar, writing letters of request to Mr. Pullen and the District Court in keeping with proper protocol and procedure, but was unable to obtain said transcripts until approximately March 17, 2000.

6.    Mr. Otero immediately filed in good faith a Section 2255 Form provided to him through the inmate legal library at FCI Waseca, along with a companion Request for Extension of Time to Supplement Section 2255 -and- Request for Appointment of Counsel. Mr. Otero noted that he was in the process of being transferred to another facility, and therefore would need "an additional 120 days time" to perfect his filing (requesting until July 17, 2000).

7.    On April 6, 2000, the Court entered an Order, granting Mr. Otero's request for extension of time, however, instead of granting until July 17, 2000, the Court granted only until May 5, 2000. Additionally, the Court denied Mr. Otero's request for Court Appointment of Counsel.

8.    On May 3, 2000, Mr. Otero filed a second Request for enlargement of time, requesting an additional 14 days time to prepare and perfect his filing, up to and including May 19, 2000.

Pg. 2

CAMPDF - www.fastio.com

9.   Mr. Otero noted that the basis for his request for enlargement of time included his inability to get on a typewriter to write his petition due to FCI Waseca staff's failure to enforce proper law library policies, and the inmate accessible copy machine for research and copies had been broken.[1]

10.   Mr. Otero therefore files this, his Supplemental Motion to his Section 2255 Petition, timely, on this _15_ Day of May, 2000.

## II.
## JURISDICTION OF THE COURT

This Court both oversaw the trial and sentencing of Mr. Otero, and therefore has subject matter jurisdiction to hear his Section 2255 Petition at this time (citing Title 28 U.S.C. § 2255).

## III.
## STATEMENT OF THE ISSUES

Mr. Otero was denied effective assistance of counsel at various stages of the pre-trial, trial, sentencing and post-sentence proceedings, and therefore his Sixth Amendment Rights were violated as well as his Due Process and Equal Protection of Law.

First, it was clear error when counsel failed to properly introduce exculpatory evidence from Mr. Otero's co-defendant, Mr. Andrade, who implicated himself, while exculpating Mr. Otero.  Counsel's failure to get a pre-trial hearing on this issue, thereby establishing basis for "severance" so Mr. Andrade

---

[1]As of yesterday FCI Waseca added an additional six typewriters and took the copy machine out storage the same day.  Hence, Mr. Otero can now complete his legal work and meet the deadline given the additional 14 day extension granted by this Court for good cause.

Pg. 3

could then take the stand at Mr. Otero's separate trial to testify in Mr. Otero's behalf, without inculpating himself before the jury, clealy prejudiced Mr. Otero's defense to the standard of a Strickland violation.  Furthermore, counsel's deficiencies both pre-trial and during trial crippled the Defense from properly raising this issue on direct appeal.  Therefore, this issue is ripe for review on Section 2255 at this time and cognizable under constitutional attack under habeas corpus.

Second, it was error for the Court to erroneously sentence Mr. Otero, a normal participant (if a participant at all) to the minimum mandatory sentence of 10 years, when his guideline range as a first time offender, level 28, Criminal History Category I, only represented a range of 78-97 months.  Because Mr. Otero made efforts to cooperate with the Government from the onset of the traffic stop when marijuana was uncovered, and again after his arrest and pre-trial detention, the Government should have moved for a downward departure under U.S.S.G. 5K1.1, or the District Court should have considered a departure under Title 18 U.S.C. § 3553(a) and/or U.S.S.G. § 5C1.2.  Moreover, Mr. Otero's testimony at trial implicated at least one defendant (Mr. Andrade, who gave the statement of Mr. Otero's non-involvement in the instant offense), and thus should move the Government to file a Motion for Reduction under Fed.Crim.R. 35 at this time.  Counsel's failure to identify and magnify this issue at the time of trial or sentencing requires this Court to grant an evidentiary hearing to further litigate this meritorious issue under the Due Process Clause of the U.S. Constitution as well as the Sixth Amendment right of Petitioner to effective assistance of counsel.

<u>Finally</u>, the Petitioner avers that the Government withheld valuable impeachment and/or exculpatory evidence that is material in nature and in violation of the Brady Rules of Fairness and the Fifth Amendment of the United States Constitution.  Had the Defense been made aware of such information at the time of trial there is a "reasonable likelihood of a different outcome."  In sum, post-trial, the evidence withheld from the Defense "puts the whole proceedings in such a light as to undermine confidence in the outcome."

**IV.**
**STATEMENT OF THE CASE**

**A.   Course of Proceedings and Disposition Below**

On December 3, 1996, a five-count Indictment was returned and filed against all defendants in the instant case (Gustavo B. Andrade, B-96-337-01, Augustin Jaime Obregon-Gonzalez, a/k/a: Jaime Obregon, B-96-337-05, Juan Rodriguez, a/k/a: Johnny and Johnny Rodriguez, B-96-337-03, Hilario Obregon, a/k/a Lalo, B-96-337-04, and **CARLOS OTERO, a/k/a: Charlie Otero, B-96-337-02).** Mr. Otero, however, was only included in Counts 1, 2, and 5. In Count 1, he was charged with conspiring to, and importing into the U.S. more than 100 kilograms of marihuana, in violation of Title 21 U.S.C. § 963, 952(a), and 960(b)(2).  In Count 2, he was charged with conspiring to, and possessing with the intent to distribute in excess of one hundred kilograms of marihuana, in violation of Title 21 U.S.C. § 846, 841(a)(1), and 841(b)(1) (B).  In Count 5, he was charged with conspiring to, and conducting a financial transaction with proceeds of a specified unlawful activity, in violation of Title 18 U.S.C. § 1856(a)(1) (A)(I).

Pg. 5

At final pretrial, Mr. Otero made timely motions for
severance, and joined in co-defendants' motion to suppress
certain tapes obtained in violation of Illinois law and the
"silver platter" doctrine.  These motions were denied by the
Trial Court.  The case was then tried before a jury.  Mr.
Otero took the stand and moved to introduce the exculpatory
statement of co-defendant Andrade, who signed said statement
in Mr. Otero's behalf while they were in the county jail to-
gether.  Judge Vela allowed the statement before the jury, but
denied Mr. Otero's request for severanace so Mr. Andrade could
testify as to the veracity of the instant exculpatory statement.
Mr. Otero was then cross-examined by Defense Counsel for Mr.
Andrade, who implicated Mr. Otero as the owner of the marihuana
in the vehicle, in an effort to protect his client and point
the finger at the innocent Mr. Otero.  AUSA Grews then cross-
examined Mr. Otero, who had been shaken up by co-defendant's
defense counsel before the jury and further confused Mr. Otero
and the jury as to the veracity of the exculpatory statement
of co-defendant Andrade.  Mr. Otero was convicted on all counts
charged against him before the jury on February 26, 1997.  Mr.
Otero had moved for judgment of acquittal based on the insuf-
ficiency of the evidence, but said motion had been denied.  Mr.
Otero, after the verdict of guilty had been returned by the jury,
then moved by way of supplemental motion for judgment of acquit-
tal on Count 2.  This motion was also denied by the District
Court. Mr. Otero timely made a motion for new trial.  This
motion was also denied.

On June 12, 1997, Mr. Otero was sentenced to a term of incarceration of 10 years, a subsequent supervised release term of 8 years, and a special assessment of $300.00.

**B.   Statement of Fact**

This case involved an alleged drug conspiracy that began during the Spring or Summer of 1996 and terminated in mide to late Fall, 1996.   The case involved five (5) defendants, one of whom died prior to trial.   At the center of the drug conspiracy were the defendants Gustavo Andrade and Juan Rodrigquez.   The Government alleged that Gustavo Andrade was the main organizer of the conspiracy and Juan Rodriquez was the money behind the organization.   Gustavo Andrade worked with contacts in Mexico with the intention of smuggling marijuana across the border and aranging for its transportation North to Chicago.   one of the people he contacted was a confidential informant, who had worked previously with the local D.E.A. Task Force.   That C.I. in return contacted the D.E.A. Task Force, which then began to build a set-up to arrange as many arrests as possible.   The dead defendant, Hilario Obregon, a/k/a Lalo, was believed to be the link between the members of the conspiracy in the Rio Grande Valley and the Petitioner, **Mr. Carlos Otero**, in Chicago.

At the time this conspiracy was initiated, which was some time in 1995, Mr. Otero was working as a manager of a diner in Indiana, near the Illinois border.   Lalo apparently came into his restaraunt a couple of times (using the name "Luis), in-quiring as to whether the diner was for sale and whether Mr. Otero was interested in making any extra money.   They exchanged

Pg. 7

phone numbers and approximately a year later, Lalo apparently
got back in touch with Mr. Otero to see if he was still inter-
ested in making that money.

According to the testimony of Petitioner, which is un-
refuted by any of the facts or testimony of government witnesses,
Mr. Otero was to pick up a relative of Lalo's (Gustavo Andrade)
at Midway Airport in Chicago and drop him off at a local motel.
Mr. Otero claims that he was told that he would be assisting
others to move furniture from a restaraunt in Chicago to another
location.  This testimony is also unrefuted by the record or
government witnesses, and is in fact, supported by the ex-
culpatory statement of co-defendant Gustavo Andrade).  Mr. Otero's
testimony evidenced that he had prior "moving experience."  He
did in fact pick up Gustavo Andrade in early of 1996, dropped
him off at a motel and was in touch with him only a few times
before the date they were arrested with the truck full of mar-
ijuana.  Prior to his arrival, co-defendant, Gustavo Andrade,
had arranged for government agents acting undercover, to trans-
port the marijuana up to Chicago.  Mr. Otero new the local
geography and streets.  Mr. Otero and co-defendant, Gustavo
Andrade, were arrested in possession of the Ryder truck co-
taining Twelve Hundred (1,200) pounds of marijuana, only a few
minutes  after picking up the truck from undercover officer
Abraham Rodriguez.  Mr. Otero, however, did not know the nature
of the transaction invovled marijuana, or was otherwise illegal,
but was under the belief that he was hired to transport furniture
as originally discussed with the missing (allegedly dead) co-

Pg. 8

defendant, Hilario Obregon, a/k/a **Lalo** both in person and by phone. Mr. Otero never once discussed or was told by co-defendant Gustavo Andrade that the instant moving job involved an illegal substance or was illegal in nature. And Mr. Otero never once shown the contents inside the Ryder Truck by Mr. Andrade or the agents before taking the wheel ·of the vehicle and being arrested a few minutes later.

## V.
## SUMMARY OF ARGUMENT

Mr. Otero was denied his right to Due Process of Law and Equal Protection of Law when the Government failed to turn over valuable <u>Brady</u> materials at the time of trial. Namely, the Government's investigative reports evidencing Mr. Otero was not a participant in the instant conspiracy. Under the Brady Rules of Fairness the Government is required to provide the Defense with impeachment or exculpatory evidence within the possession of its office or agents. Failure to do so violates Mr. Otero's Fifth Amendment rights under the United States Constitution, and an evidentiary hearing must be ordered on this issue at this time.

Additionally, it was clear error when counsel failed to properly introduce the exculpatory evidence from Mr. Otero's co-defendant, Gustavo Andrade, who signed a written statement exculpating Mr. Otero and implicating himself in the instant crime. Counsel's failure to properly present the facts to the Court pre-trial, to obtain a pre-trial hearing on this signif-icant constitutional issue violates the <u>Strickland</u> standard for

ineffective assistance of counsel under the Sixth Amendment of
the United States Constitution.  Had counsel properly performed
his duties, the Court would have granted counsel's pre-trial
motion for "severance," and Gustavo Andrade's exculpatory state-
ment in Mr. Otero's behalf would have been properly introduced
before the jury, along with the supporting testimony of Mr.
Andrade.  Instead, Mr. Andrade was unable to take the stand
because both he and Mr. Otero were on trial together, and Mr.
Otero had to take the stand in order for the statement of Mr.
Andrade to be introduced into evidence at all.  At which point
Mr. Otero suffered the debilitating attack of Mr. Andrade's
Defense attorney, who implicated Mr. Otero as the owner of
the entire load of marijuana in the Ryder Truck in the presence
of the jury.  This prejudiced Mr. Otero irreversibly and the
jury found Mr. Otero guilty.  Mr. Otero is entitled to a new
trial on this issue at this time.

Finally, it was clear error for the Court to erroneously
sentence Mr. Otero, a normal participant (if a participant at
all) to the minimum mandatory sentence of 10 years, when his
guideline range as a first time offender, level 28 Criminal
History Category I, only represented a range of 78-97 months.
Furthermore, because Mr. Otero made efforts to cooperate with
the Government as an innocent citizen from the onset of the
traffic stop when marijuana was uncovered, and again after his
arrest and pre-trial detention, the Government, in good faith,
should have moved the Court for a downward departure motion
at the time of sentencing under U.S.S.G. §5K1.1, or in the

alternative the sentencing court should have considered a
downward departure under U.S.S.G. § 5K2.0, § 5C1.2 (safetey
valve) or Title 18 U.S.C. § 3553(a).  Moreover, Mr. Otero's
honest testimony at trial before the jury clearly assisted
the government in convicting Mr. Andrade and his co-defendants
when testifying as to the "truthfulness" of Mr. Andrade's
statement implicating Mr. Andrade, along with Mr. Andrade's
county jail statements that "the Indictment is all true" when
referring to Mr. Andrade and his co-defendants (save Mr. Otero,
who Andrade exculpated in his written statement).  Counsel's
failures to raise this issue at the time of sentencing, re-
questing the Government and/or Court to reduce Mr. Otero's
sentence commensurately, violated the Strickland standard and
Mr. Otero should be granted relief at this time from the 10
year erroneous sentence imposed upon him by the Court.

## VI.
## ARGUMENT

I.   **MR. OTERO WAS DENIED HIS RIGHT TO DUE PROCESS AND EQUAL
     PROTECTION OF LAW WHEN THE GOVERNMENT FAILED TO TURN OVER
     VALUABLE BRADY MATERIALS AT THE TIME OF TRIAL, IN VIOLATION
     OF THE BRADY RULES OF FAIRNESS AND MR. OTERO'S FIFTH AMEND-
     MENT RIGHTS, REQUIRING A NEW TRIAL AT THIS TIME.**

The instant case involved an alleged drug conspiracy that
began in the Spring or Summer of 1996 and terminated in mid to
late Fall of 1996.  The case involved five (5) defendants, one
of whom died prior to trial.[2]

---

[2] The deceased defendant is Hilario Obregon, a/k/a Lalo.  Lalo was
presented to be the link between the members of the conspiracy in the Rio
Grande Valley and Mr. Otero in Chicago, Illinois.  Because the Government
is in possession of exculpatory or impeachment evidence from the invest-
igation involving "Lalo," and that evidence is sufficient to "undermine
confidence in the outcome of the verdict on the case," a new trial is
warranted at this time (citing Kyles v. Whitley, --U.S.--, 115 S.Ct. 1555,
131 L.Ed.2d 481 (1985).

At the time the alleged conspiracy was initiated, which was some time in 1995, Mr. Otero was working as a manager of a diner in Indiana, near the Illinois border. Lalo came into Mr. Otero's restaraunt a couple of times using the name "Luis", inquiring as to whether the diner was for sale and whether Mr. Oero was interested in making any extra money.. They exchanged phone numbers and approximately a year later, Lalo got back in touch with Mr. Otero to see if he was still interested in making that money.

As per the testimony of Mr. Otero at trial, he was to pick up a relative of Lalo's (Gustavo Andrade) at Midway Air-port in Chicago and drop him off at a local motel. Mr. Otero testified that Lalo indicated that he would be assisting others to move furniture from a restaurant in Chicago to another lo-cation. Mr. Otero's testimony showed that he had prior moving experience. He did in fact pick up Gustavo Andrade as per Lalo's instructions in early September of 1996, dropped him off at a motel and was in touch with him only a few times before the date they were arrested with the truck full of marijuana. Prior to Mr. Otero's arrival, co-defendant, Gustavo Andrade, had arranged for government agents acting undercover, to trans--port the marijuana up to Chicago. Mr. Otero new the local geo-graphy and streets. In sum, Mr. Otero was led to believe by both Lalo and Andrade that he would be "moving furniture." Never did either of Mr. Otero's contacts in this conspriacy inform him that there was contraband of any kind involved in his employment. Mr. Otero and Andrade were arrested in pos-sesion of the Ryder truck containing twelve hundred (1,200)

pounds of marijuana, only a few minutes after picking up the
truck from undercover officer Abraham Rodriguez.   When Mr.
Otero was shown the marijuana in the back of the Ryder Truck
by arresting officers, he immediately requested an opportunity
to "go and point out the men who gave him the keys to the truck"
(TT. 1071).   In fact his testimony shows that he was practically
"begging" the officers:

> Q.   Well, who did you think was responsible for that.
>      Did you think that the pot [marijuana] just got
>      in there magically?
>
> A.   Well, no.  No.  All I could remember saying as
>      soon as I saw it, I also asked one of the officers,
>      because it was like three minutes, once I picked
>      up the truck, they stopped us three minutes later,
>      I was practically begging the officer to drive us
>      right back now so I could point out the person
>      that gave me the truck.  I said it to him several
>      times.  And once he laughed and just said, "Don't
>      worry about that.  He's working with us."

(TT. 1071, Mr. Otero on Direct Examination by Defense Counsel
Grumbles).   Given the nature of Mr. Otero's suprize at his
first awareness that drugs were involved in his employment, he
immediately made effort to cooperate with local law enforcement
officers in pointing out the culpable parties.  Moreover, Mr.
Andrade's statement exculpates Mr. Otero from having any know-
ledge of marijuana in the Ryder Truck:

> "I Gustavo Andrade, testify that Carlos Otero did not
> know anything about the businesses that myself and Jaime
> Obregon were doing in Chicago, Illinois, neither did he
> have any knowledge that there was marijuana in the truck
> --in the truck we picked up the day we were arrested."

(TT. 1095-96).   There can be little question that the Government
has withheld valuable Brady materials from the Defense in the
instant case, and the Government is required to turn them over

Pg. 13

to the Court and defense as this time.

## THE BRADY MATERIALS WITHHELD

The Defense contends at this time that the Government has within its possession Brady materials of Mr. Otero's non-involvement in the instant offense.  Specifically, the agents' case notes from the investigation that led to the arrest of the Ryder Truck and Mr. Otero.  Mr. Otero contends that the Government employed Confidential Informants to set up the instant marijuana conspiracy/transaction.  Those informants are named as **Jaime Obregon-Gonzales** and **Hilario Obregon a/k/a Lalo,** inter alia.

Mr. Otero contends that the Government withheld evidence supporting his Defense of non-involvement and lack of knowledge that marijuana was being transported in the Ryder Truck he was hired to move furniture in for a man named Luis (ostensibly Hilario Obregon a/k/a "Lalo").  Mr. Otero further contends that the Government is aware of certain impeachment evidence and exculpatory evidence within its agents possession that "places the whole case in such a light as to undermine confidence in the verdict" (citing Kyles v. Whitley, 131 L.Ed.2d 481 (1995)).

Mr. Otero demands the Government produce these Brady materials at this time so he can properly reply to Government's Response in Opposition.[3]

---

[3] Mr. Otero was only given the 1691 pages of trial transcripts recently after a six month process of requesting the same from his Court Appointed Counsel and the District Court by way of Motion.  This issue of Brady violations only became readily apparent when beginning to review the transcripts of the trial proceedings.  Counsel failed to catch this issue during trial or on appeal, and thus, Mr. Otero properly presents the Brady allegations for the first time on Section 2255.  Furthermore, Mr. Otero is unskilled in matters of the law, having only a Sixth Grade education and indigent, without

## THE BRADY RULES

The Brady Rules of Fairness provides that the suppression of evidence favorable to an accused violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.  Brady v. Maryland, 373 U.S. 83 (1963).  Additionally, the Supreme Court more recently dictated that the defendant must merely establish that:

> "the favorable evidence could reasonably be taken
> to put the whole case in such a different light as
> to undermine confidence in the verdict."

(citing Kyles v. Whitley, 514 U.S. 425, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).  Given the nature of the evidence that the Government will be providing to the Defense and Court in their Response in Opposition, Mr. Otero respectfully believes that the "materiality" standard under Brady and Kyles will be established for the Court.[4]

Therefore, he requests the Court Order an evidentiary hearing to further litigate this claim of due process and constitutional violations committed by the Government and/or its agents during the investigation and trial of Mr. Otero in the case at bar.

---

financial ability to hire private counsel, and the District Court denied his request for appointment of counsel to represent him on Section 2255 proceedings under the provisions allotted to criminal defendants such as Mr. Otero under Title 18 U.S.C. § 3006(A).

[4]
   Under Brady the Government is required to provide the Defense with impeachment or exculpatory materials within its possession, including those materials that would benefit the Defense in the possession of agents from other offices or districts, including state and county offices, agents or oficials.  Wherefore, Mr. Otero requests these materials at this time so he can further reply to the Government's Response Brief.

II.  **COUNSEL WAS CLEARLY INEFFECTIVE WHEN FAILING TO PROPERLY
INTRODUCE EXCULPATORY EVIDENCE FROM GUSTAVO ANDRADE, WHO
SIGNED A WRITTEN STATEMENT EXCULPATING MR. OTERO AND IM-
PLICATING HIMSELF IN THE INSTANT CRIME.  COUNSEL'S FAIL-
URE TO PROPERLY  PRESENT THIS STATEMENT TO THE TRIAL
JUDGE PRE-TRIAL WHEN MOVING FOR "SEVERANCE" CAUSED UNDUE
PREJUDICE AGAINST MR. OTERO, AND IS REVERSIBLE ERROR.**

Defense counsel Grumbles filed a pre-trial motion for
"severance" in the case at bar, however, he failed on one key
point in his pre-trial presentation.  He failed to properly
present the Court with the weight of the exculpatory statement
by Mr. Otero's co-defendant, Mr. Gustavo Andrade.  The statement
reads as follows:

> "I Gustavo Andrade, testify that Carlos Otero did <u>not</u>
> know anything about the businesses that myself and
> Jaime Obregon were doing in Chicago, Illinois, neither
> did he have any knowledge that there was marijuana in
> the truck--in the truck we picked up the day we were
> arrested."

(TT. 1095-96).  Because counsel failed to properly present
this bombshell of an exculpatory statement when requesting
"severance" pre-trial, Mr. Otero was denied the motion and
placed into a position where he was required to "take the
stand" to introduce the exculpatory statement of co-defendant
Andrade.  In so doing, Mr. Otero was opened up to unrelenting
attack by Andrade's Defense Counsel before the jury, wherein
Mr. Otero was presented at the "controller of marijuana" in the
Ryder Truck who was "caught behind the wheel with 1,200 pounds
of weed," and was now "trying to pin it on Gustavo Andrade"
(TT. 1108-1109).  Defense counsel further bullied Mr. Otero
before the jury, damaging his character by referring to him
as "a desperate man," who was "caught red handed," and would
"at this point sell your [his] own mother out to try to get

out from under the sentence that you [he] deserve in this case"
(TT. 1109).

## MOTION TO SEVER

As a general rule "persons indicted together should be
tried together, especially in conspiracy cases." Id. (citing
United States v. Pofahl, 990 F.2d 1456, 1483 (5th Cir. 1993).
A severance should be granted "only if there is a serious
risk that a joint trial would compromise a spcific trial right
of one of the defendants, or prevent the jury from making a
reliable judgment about guilt or innocence." Zafirio v. United
States, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993); see also
United States v. Buckhalter, 986 F.2d 875, 876 (5th Cir. 1993)
(requiring severance only when specific compelling prejudice
outweighs interest in judicial economy).

In the instant case there can be little question that
Mr. Otero suffered "specific compelling prejudice" by the
District Court denying his motion for severance.  Furthermore,
it is clear that the "specific compelling prejudice outweighed
interest in judicial economy" (citing Bukhalter, supra).  Not
only was Mr. Otero forced to take the stand to obtain inclusion
of the necessary exculpatory statement of his co-defendant,
but he was also prejudiced by his co-defendant's defense coun-
sel making him look like the guilty party, "passing the blame"
to the very individual who his client had originally exculpated.
Moreover, because the severance was not granted, affiant and
co-defendant, Gustavo Andrade refused to take the stand in

Pg. 17

a joint criminal trial and exculpate Mr. Otero while inculpating himself before the jury.[5]  Had counsel properly presented the instant facts pre-trial, there is a reasonable likelihood that the Court would have ruled differently, thereby allowing Mr. Otero severance, and releasing co-defendant Andrade to elaborate on Mr. Otero's non-involvement and lack of knowledge in the instant conspiracy to transport marijuana.  Moreover, this would have insulated Mr. Otero from the resultant prejudice before the jury of Andrade's Defense Counsel "character assinating" and "implicating" Mr. Otero in the conspiracy.

## COUNSEL WAS INEFFECTIVE

An accused party's right to be represented by counsel is a fundamental component of our criminal justice system.  United States v. Cronic, 466 U.S. 648, 653, 104 S.Ct. 2039, 2043 (1984). The right to counsel is deemed fundamental because "the very premisse of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."  Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555 (1975).  See also United States v. Cronic, 466 U.S. 648, 655-56, 104 S.Ct. 2039, 2045 (1984).

The right to counsel plays a crucial role in the adver-

---

[5] It is evident from the trial record, and Mr. Andrade's exculpatory statement in Mr. Otero's behalf, that Mr. Otero was not knowingly involved in the transportation of the marijuana in the Ryder Truck.  Had counsel for Otero properly presented this pre-trial at a Motions hearing for severance, there is a reasonable likelihood that the Judge would have ruled differently and granted a "severance" in Mr. Otero's behalf, thereby enabling the guilty drug dealer to testify to the innocence of Mr. Otero in the case at bar. This clearly gives rise to a Strickland standard violation and a Sixth Amendment violation of Mr. Otero's right to effective assistance of counsel.

sarial system embodied in the Sixth Amendment, since access
to counsel's skill and knowledge is necessary to give the
defendant ample opportunity to defend the case presented by
the prosecutor. Strickland v. Washington, 466 U.S. 668, 685,
104 S.Ct. 2052, 2063 (1984); Adams v. United States ex rel
McCann, 317 U.S. 269, 275-76, 63 S.Ct. 236, 240 (1942). See
also Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55 (1932).

As a result is has long been recognized that the Consti-
tutional right to counsel includes the right to effective
assistance of counsel. United States v. Cronic, 466 U.S.
648, 654, 104 S.Ct. 2039, 2044 (1984); McMann v. Richardson,
397 U.S. 759, 771 FN[14], 90 S.Ct. 1441, 1449 (1970). The
defendant, in order to prove that he was denied his right to
effective assistance of counsel, must establish two prongs
under the Strickland standard:

(1) counsel's performance was deficient (thereby estab-
lishing the "cause" prong), and

(2) counsel's performance resulted in prejudice to the
defense (thereby establishing the "prejudice" prong).

A.   **COUNSEL'S DEFICIENT PERFORMANCE--THE "CAUSE" PRONG**

In order to prove deficient performance, Mr. Otero must
list acts or ommissions of counsel which are not as a result
of professional judgment, thereby establishing the "cause"
prong under Strickland. The Court then decides whether such
acts were outside the range of providing competent assistance.
Id. Strickland at 690.

Pg. 19

B.    <u>PREJUDICE TO DEFENSE--THE "PREJUDICE" PRONG</u>

After meeting the first prong of <u>Strickland</u>, Mr. Otero must overcome the second prong as well, the "prejudice" prong. To do this Mr. Otero must establish that he was prejudiced by his attorney's ineffectiveness, by demonstrating that there is "a reasonable probability that, but for counsel's errors, the results would have been different." <u>Strickland v. Washington</u>, 466 U.S 668, 694, 104 S.Ct. 2052, 2068 (1984). In other words, he must establish that there is a reasonable probability that, absent the errors, the fact finder would have a reasonable doubt regarding his guilt. <u>Id</u>. <u>Strickland</u> at 695.

**In the instant case Mr. Otero's right to be represented by effective assistance of counsel was violated as follows:**

(1) Counsel failed to properly present the exculpatory statement of co-defendant Gustavo Andrade pre-trial in the Motion for Severance.

(2) Counsel failed to present the appropriate case law supported with the facts as noted herein, concerning the "serious risk that a [the] joint trial would compromise a specific trial right of one of the Defendants [I.e., Mr. Carlos Otero], or prevent the jury from making a reliable judgment about guilt or innocence [free from other defense lawyers calling into question the guilt or innocence of Mr. Otero under cross examination]" (citing <u>Zafiro v. United States</u>, 506 U.S. 534, 539, 113 S.Ct. 933, 938 (1993); see also <u>United States v. Buckhalter</u>, 986 F.2d 875, 876 (5th Cir. 1993)(requiring severance only when specific, compelling

Pg. 20

prejudice outweighs interest in judicial economy), and

(3) Counsel failed to follow up on the additional ex-
culpatory evidence available from the Government in regards
to the Brady materials exculpating Mr. Otero from knowledge
of the instant marijuana conspiracy he was ultimately arrested
for.

**Mr. Otero was substantially prejudiced by Counsel's
above three failures and ommisions.**

(1) Had counsel properly presented the exculpatory
statement of co-defendant Gustavo Andrade pre-trial, there
can be little question the outcome of the proceedings would
have been the same. First, the Court would likely have
granted Mr. Otero's original request for severance, thereby
releasing Andrade to take the stand in Mr. Otero's behalf,
exculpating Otero from knowledge of the marijuana conspiracy.
Second, with a separate trial by way of severance, Mr. Otero
would have been able to exercise his right not to testify and
allow the testimony of Andrade to exculpate him without being
opened up to cross examination by the prosecutor and Mr.
Andrade's Defense counsel.[6]   Third, Mr. Otero would not have
had to take the stand to facilitate the introduction of Mr.
Andrade's exculpatory statement in his behalf.[7]

---

[6] Otero's eight year old conviction for possession of two grams of
cocaine, where he received a two year term of probation, would have been
inadmissible before the jury as well, and he would not have suffered prejudice.

[7] Otero was severely prejudiced by counsel's failure to properly
present the exculpatory statement some other way than having Otero take
the stand, as evidenced by the trial transcript of Andrade's counsel's
cross examination appearingly inculpating Otero in a crime he was not cul-
pable of.

(2) Had counsel presented the appropriate case law supported with the facts as noted above, there is "a reasonable probabilty that, but for counsel's errors, the results would have been different" Id. Strickland at 694.  For example, the Fifth Circuit in United States v. Pofahl, 990 F.2d 1456, 1483 (1993) held that a severance should be granted:

> "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

Id. at 1483.  In the instant case Mr. Otero's right to remain silent [not testify] was was clearly put at risk in the joint trial of Andrade and Otero.  Moreover, Otero was unable to call to the stand Andrade, who could (and was willing to) exculpate Otero from knowledge of the marijuana conspiracy. And finally, Mr. Otero would not have been placed in a position before the jury to be character assasinated by Andrade's defense counsel.  Counsel's performance was cleary deficient on this issue, and counsel's performance resulted in prejudice to the defense.  A new trial should be ordered at this time.

(3) Had counsel followed up on the additional exculpatory evidence available from the Government in regards to the Brady materials exculpating Mr. Otero from knowledge of the instant marijuana conspiracy "there is a reasonable likelihood that the results would have been different" Id. Strickland at 694.[8]

---

[8]Mr. Otero contends that the Government has within its possession Brady materials showing additional exculpatory statements from his co-defendants received by the government and its agents during the instant investigation, survellience and arrest of Mr. Otero for the crimes charged against him in the Indictment.  Upon receipt of these additional documents Mr. Otero will be able to further evidence "prejudice" against him by counsel's failure to perform, as well as the government's violations of the Brady Rules of Fairness and the Due Process of Law.

Pg. 22

III. THE COURT COMMITED ERROR WHEN IT SENTENCED MR. OTERO
TO THE MINIMUM MANDATORY TERM OF 10 YEARS, WHEN OTERO
SHOULD HAVE BEEN GRANTED A DEPARTURE FROM THE MINIMUM
MANDATORY TERM TO THE GUIDELINE RANGE OF 78-97 MONTHS.
NOTWITHSTANDING, MR. OTERO SHOULD HAVE BEEN GRANTED A
DEPARTURE UNDER U.S.S.G. § 5C1.2, § 5K2.0, §5K1.1 OR
TITLE 18 U.S.C. § 3553(a) IN THE CASE AT BAR.

First, the record is evident that Mr. Otero was labeled
as a normal participant in the case at bar. His guideline
range was well below the 10 year minimum mandatory sentence
based on the PSIR and Otero's Judgment and Commitment Papers.
For example, Mr. Otero's overall Criminal History Category
is I, with a overall offense level of 28, representing an
overall guideline range of 78-97 months.

Second, Mr. Otero made every effort to cooperate with
authorities from the moment he realized there was a crime
taking place.

Third, Mr. Otero met with authorities and told them all
he knew about the instant conspiracy and the players involved.

Fourth, Mr. Otero took the stand at trial and assisted
the government in implicating his co-defendants in the crime
for which they had been charged.[9]

Fifth, Mr. Otero did provide the government with all
information and evidence he had concerning the offenses that
were part of the same course of conduct for which he was
charged.

---

[9]It is interesting to note that the exculpatory statement of Mr.
Andrade concerning Mr. Otero benefited the Government in convicting Mr.
Otero's co-defendants at trial. The transcripts of Mr. Otero on direct
examination inculpate the other defendants. If nothing else, Mr. Otero
should be entitled to a Rule 35 Motion for Reduction of Sentence for his
substantial assistance to the Government, regardless of whether he meets
the five prong criteria under U.S.S.G. § 5C1.2.

## U.S.S.G. SECTION 5C1.2 (SAFETY VALVE)

The following criteria under U.S.S.G. § 5C1.2 are re-
quisite for application of the "safety valve":

(1)  the defendant does not have more than 1 criminal
history point, as determined under the sentencing
guidelines;

(2)  the defendant did not use violence·or credible
threats of violence or possess a firearm or other
dangerous weapon (or induce another participant
to do so) in connection with the offense;

(3)  the offense did not result in death or serious
bodily injury to any person;

(4)  the defendant was not an organizer, leader, man-
ager, or supervisor of others in the offense, as
determined by the sentencing guidlines and was
not engaged in a continuing criminal enterprise,
as defined in 21 U.S.C. § 848; and

(5)  not later than the time of the sentencing hearing,
the defendant has truthfully provided to the Gov-
ernment all information and evidence the defendant
has concerning the offense or offenses that were
part of the same course of conduct or of a common
scheme or plan, but the fact that the defendant
has not relevant or useful other information to
provide or that the Government is already aware
of the information shall not preclude a determin-
ation by the court that the defendant has complied
with this requirement (emphasis added).

Mr. Otero clearly meets the above five criteria, and there-
should have been granted the "safety valve" at the time sentence
was imposed upon by the District Court.  Counsel's failure to
request the "safety valve" establishes the "cause" prong on
this issue, and the above proof establishes the "prejudice"
prong under Strickland.  Therefore, Mr. Otero is entitled to
a resentencing hearing and a departure from the minimum man-
datory term of 10 years to a term commensurate with the ap-
propriate guideline range to be determined by the Court.

## U.S.S.G. SECTION 5K2.0 (EXTRAORDINARY CIRCUMSTNACES)

Under U.S.S.G. § 5K2.0 the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guidelins pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts (citing U.S.S.G. 5K2.0, also cross-referenced as Title 18 U.S.C. § 3553(a)).

### MR. OTERO'S CASE IS EXTRAORDINARY AND WARRANTS DEPARTURE

In the case at bar Mr. Otero practically "begged the arresting officers to drive him to point out the person who gave him the truck" containing the marijuana charged:

> Q.  Well, who did you think was responsible for that? Did you think that the pot just got in there magically?
>
> A.  Well, no. No. All I could remember saying as soon as I saw it, I also asked one of the officers, because it was like three minutes, once I picked up the truck, they stopped us three minutes later, I was practically begging the officer to drive us right back now so I could point out the person that gave me the truck [full of marijuana]. I said it to him several times. And once he laughed and said, "Don't worry about that. He's working with us."

Id. at (TT 1071, lns. 2-11, Otero Direct). Additionally, Mr. Otero assisted the government at trial by testifying to what

Pg. 25

Mr. Andrade told him in the county jail concerning his guilt
in the offense charged against Andrade and his co-defendants:

> Q. Now, I take it by the statement that you say
> you got from Mr. Andrade that both he and Mr.
> Obregon were involved in the marijuana traf-
> ficking.
>
> A. What do you mean, the statement that he signed?
>
> Q. That you say he signed.
>
> A. Yes.

Id. at (TT. 1128, Otero on Cross by AUSA Crews). Here, at the
behest of AUSA Crews, Mr. Otero inculpates two of the defend-
ants in the case, ultimately resulting in a verdict of guilt
by the jury. Further, Mr. Otero gave factual and truthful
information to the Government and the Court concerning his
co-defendant's involvement in the crime, which he obtained
from Mr. Andrade while they were in the jail cell together:

> THE COURT: Did you -- let me ask him. Now, Mr. Otero,
> did Mr. Andrade ever give you a statement?
>
> THE WITNESS: Yes.
>
> THE COURT: While you were still in the cell with him?
>
> THE WITNESS: Yes, while we were in the cell.

Id. at (TT. 1079). The discourse continued:

> THE WITNESS: Okay. I asked him why did he [Andrade]
> get me into this situation. And he just would
> nod his head and said -- he apologized to me and
> said he was sorry. And finally, after a while,
> he said he would help me any way that he can be-
> cause he had -- I don't know what they call them,
> the charges that they gave everybody. They gave
> me charges and him. He had read all the charges
> and he knew that everything was true, I guess, or
> something. And he said he would just help me out,
> and if possible, even sign something. So I de-
> cided to make some knind of -- some kind of state-
> ment what he can sign.

Id. at ((TT. 1079-80). After telling the Court the above, Mr.

CILPDF - www.fasiss.com

Otero continued to assist the government before the presence

of the jury:

> A.   Well, I wrote up the statement and I gave to
>      Andrade to read, and he read it after he agreed
>      to help me and to sign the statement.  And he
>      signed it, and that was it.
>
> Q.   Okay.  Let's back up a little bit here.  What
>      would have brought about you getting any type
>      of statement from Mr. Andrade?
>
> A.   Okay.  Well, from the beginning when we finally
>      got in there together, I confronted him.  I wanted
>      to find out why he put me in this position.  He
>      just told me he was sorry and that he -- he would
>      be willing to sign -- **help me out some way by
>      signing a confession.**
>
> Q.   Why would he do that?
>
> A.   Like I said, **the charges, the papers they gave me,
>      the charges, we read them all, and he knew that
>      everything that was written down was true he had
>      said** because he asked me to read them several
>      times, and -- since they were in English.  And
>      that's the reason.  He just knew that everything
>      was true.

Id. (TT. 1088, Otero on Direct).  Based on the above trial

testimony it is evident that Mr. Otero not only moved to

assist law enforcement from the moment of the marijuana being

discovered in the back of the Ryder Truck, but that Otero also

assisted the Government during trial before the jury.[10]  Under

these circumstances, these very extraordinary and unusual cir-

cumstances, the Court should have been compelled by Defense[11]

---

[10] The Petitioner respectfully contends that the Government, if
nothing else, should have moved for a reduction in Mr. Otero's sentence
by way of U.S.S.G. § 5K1.1, U.S.S.G. § 5C1.2 or file a good faith motion
for reduction under Fed.Rules of Crim.P. 35 at this time.

[11] Counsel was again ineffective for failing to point this out to
the sentencing court before imposition of sentence occured.  This too
rises to the level of a Strickland violation, and a hearing should be
ordered on this issue at this time in the interest of justice.

to depart beneath the minimum mandatory of 10 years by way of Title 18 U.S.C. § 3553(a) and/or U.S.S.G. 5K2.0.

## VII.
## CONCLUSION

For the reasons as set forth in Petitioner's Section 2255 and Supplemental Brief in Support, the Court should

(1) Order relief as requested at issues I, II & III, and vacate Counts 1, 2, & 5 of the Indictment, and

(2) Order Court appointment of counsel to represent Mr. Otero for the remainder of proceedings in the case at bar;

further, Mr. Otero prays this Court grant him any and all other relief the Court deems appropriate in its wisdom and judgment that would benefit him in gaining factual relief from the 10 years sentence imposed upon him.

Dated this 16 Day of May, 2000

Respectfully Submitted,

Mr. Carlos Otero
Reg. No. 74485-079
F.C.I. Waseca
P.O. Box 1500
Waseca, Minnesota  56093

## CERTIFICATE OF SERVICE

I hereby certify, under the penalty of perjury and pursuant to Title 28 U.S.C. § 1746, that a true and correct copy of the foregoing instrument was mailed, postage pre-paid and properly addressed to the Office of the United States Attorney, and the Clerk of the Court, on this 15 Day of May, 2000.

Mr. Carlos Otero